USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 2 5 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                :
MARIAN YOUNG,             :
                :
          Plaintiff,     :     11 Civ. 2927 (KBF)
   -v-              :
                :     MEMORANDUM
                :     DECISION & ORDER
LIMITED BRANDS, et al.,    :
                :
         Defendants.   :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

     In 2011, Plaintiff Marian Young ("Plaintiff") filed a lawsuit alleging employment discrimination and retaliation under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (the "ADEA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq. (the "ADA"), as well as state and city law claims under the New York State Human Rights Law, New York Executive Law § 290 et seq. (the "NYSHRL") and the New York City Human Rights Law, New York City Administrative Code § 8-101 et seq. (the "NYCHRL").

     Plaintiff alleges that her former employer, Defendant Limited Brands, Inc. ("Limited Brands"), operator of the Henri Bendel store, along with certain of Plaintiff's supervisors at Henri Bendel (collectively, "Defendants"): (1) discriminated against her on the basis of a disability; (2) failed to accommodate her disability; (3) retaliated against her for complaining of such discrimination; (4) discriminated against her on the basis of age; and (5) harassed her. Defendants have now moved

for summary judgment on all claims. For the following reasons, defendants' motion for summary judgment is GRANTED in full.

## FACTUAL BACKGROUND

The following facts are undisputed.

### I. Henri Bendel and Plaintiff

In 2007, Plaintiff was hired as the Assistant General Manager (AGM) of the Henri Bendel retail store. (Conklin Decl. ¶ 6.) The store operates with several dozens of employees and third-party vendors, and is managed by a General Manager ("GM") with the AGM's assistance. (Conklin Decl. ¶ 3; Rasmussen Decl. ¶ 6.)

As AGM, Plaintiff was responsible for the back-office operation of the store, including managing its inventory, customer service, alterations, and maintenance. (Conklin Decl. ¶ 7.) Plaintiff had second-in-command responsibility for the store and supervisory responsibilities for 10 to 40 employees. (Conklin Decl. ¶ 8; Harris Decl. Ex. C (Young Dep. 174).)

### II. Plaintiff's First Performance Meeting

As AGM, Plaintiff reported to Kristen Conklin, the GM of the store. (Conklin Decl. ¶ 2.) Conklin was responsible for improving the store's performance, which required her to assess the strengths and weaknesses of her management team, including Plaintiff. (Rasmussen Decl. ¶ 8; Conklin Decl. ¶ 9.) Conklin determined that Plaintiff was under-performing and that her area of responsibility, store operations, needed to improve. (Conklin Decl. ¶¶ 8, 10.)

2

After assessing Plaintiff's performance and learning of several mistakes she had made, Conklin met with Plaintiff to discuss her performance on June 18, 2008. (Conklin Decl. ¶¶ 10–11.) Human Resources director Dana Rasmussen, with whom Conklin had already discussed her concerns about Plaintiff's performance, also attended this meeting. (Conklin Decl. ¶ 11; Rasmussen Decl. ¶ 10; Harris Decl. Ex. C (Young Dep. 192–96).)

III.    Plaintiff's First Medical Leave

Plaintiff took a medical leave of absence to have surgery beginning on August 12, 2008. (Harris Decl. Ex. C (Young Dep. 109, 115).) She returned to work on a part-time basis on September 19, 2008, which Defendants accommodated, and returned to full-time duty on September 26, 2008. (Id. (Young Dep. 116, 119).) On October 1, 2008, Plaintiff's doctor limited her to working five hours a day, which Defendants again accommodated. (Id. (Young Dep. 119).)

IV.    Plaintiff's Performance Improvement Plan

On October 1, 2008, Conklin and Rasmussen issued Plaintiff a Performance Improvement Plan ("PIP"). (Conklin Decl. Ex. A; Rasmussen Decl. A.) The PIP was designed to let Plaintiff know where she was not meeting Defendants' expectations and to provide her with guidance and an opportunity to improve her performance. (Conklin Decl. ¶¶ 12–13; Rasmussen Decl. ¶¶ 11–13.) Conklin and Rasmussen had planned to issue the PIP, which was dated September 2008, before October 1, but could not do so because Plaintiff was on her first medical leave at the time. (Harris Decl. Ex. C (Young Dep. 232); Conklin Decl. ¶ 13; Rasmussen Decl. ¶ 13.)

V.     Plaintiff's Second Medical Leave

Plaintiff requested another medical leave of absence on October 10, 2008, which was granted, and she remained on leave through February 6, 2009. (Harris Decl. Ex. C (Young Dep. 129–30).)

On October 24, 2008, while on her second medical leave, Plaintiff wrote a letter to Rasmussen alleging that she was being discriminated against because of an unspecified "disability." (Id. (Young Dep. 232); Rasmussen Decl. ¶ 15; Rasmussen Decl. Ex. B (Young letter to Rasmussen, Oct. 24, 2008).) In her letter, Plaintiff stated that she had received positive feedback from former supervisors and current coworkers, and argued that Conklin had been her supervisor for only two months, which Young felt was insufficient time to assess her performance. (Rasmussen Decl. Ex. B.) In response to Plaintiff's letter, Rasmussen wrote her on November 10, 2008, to inform her that her concerns would be addressed when she returned from leave. (Rasmussen Decl. ¶ 18; Harris Decl. Ex. C (Young Dep. 234); Rasmussen Decl. Ex. C (Rasmussen letter to Young, Nov. 10, 2008).)

VI.     Plaintiff's Second Performance Meeting

In February 2009, after Plaintiff returned from her second medical leave, Conklin and Rasmussen met with her and stressed that they based the PIP solely on their assessment of her performance and opportunities for improvement. Neither Conklin nor Rasmussen considered Plaintiff to be disabled, and neither was aware of any specific "disability" that Plaintiff may have had. (Rasmussen Decl. ¶ 17; Conklin Decl. ¶ 16.) They explained to Plaintiff that Conklin did in fact have

4

sufficient time to evaluate her performance; that her prior supervisor's assessments of her performance were immaterial, because Conklin had been brought in to improve the store's performance and operation rather than keep the status quo; and that Plaintiff had opportunities to improve despite other coworkers' positive feedback. (Rasmussen ¶ 17, 19–20; Conklin Decl. ¶¶ 16–17.)

VII.    Plaintiff's Medical Restrictions

When Plaintiff returned from her second leave of absence on February 6, 2009, her doctor's only restriction was that she work no more than four hours a day, five days a week. (Harris Decl. Exs. C (Young Dep. 130); D (letter from Ms. Young's doctor, Feb. 6, 2009).) This restriction remained in place for the remainder of her employment. (Harris Decl. Ex. C (Young Dep. 130).)

Defendants accommodated Plaintiff's restrictions and scheduled her in accordance with her restriction for no more than four hours a day, five days a week. (Harris Decl. C (Young Dep. 250); Conklin Decl. B (Young schedules); Conklin Decl., ¶¶ 18–20.). Nevertheless, Plaintiff unilaterally violated Conklin and her doctor's instructions and worked more hours on several occasions. (Conklin Decl., ¶¶ 22–24.)

On February 14, 2009, Conklin informed Plaintiff that she had exceeded the number of hours she was supposed to work both on that day and for the entire week, and told her "to ensure [she was] only working 20 hours and that the shifts [were] no longer than four hours a day according to [her] doctor's restrictions." (Conklin Decl. Ex. C (Conklin email to Young, Feb. 14, 2009); Conklin Decl., ¶ 22.)

Conklin reminded Plaintiff to "[p]lease ensure you are following the restricted number of hours you are to be working." Id.

On March 13, 2009, Conklin again reminded Plaintiff that she was to follow her doctor's work restrictions and that she was "only to work 20 hours per week, including work done in the office and at home." (Harris Decl. Ex. C (Young Dep. 267); Conklin Decl. Ex. D (Conklin email to Young, Mar. 13, 2009); Conklin Decl., ¶ 23.) Because Plaintiff had already worked 20 hours that week, Conklin requested that Plaintiff not come in for her scheduled shift on Saturday, March 14, 2009.

On March 16, 2009, Conklin again advised Plaintiff that she could not "continue to work outside of the restrictions unless you have a note from your doctor stating otherwise. We are truly concerned for you, and this is in best interest for your recovery. Please do not continue to work longer shifts than what you are scheduled for." (Harris Decl. Ex. C (Young Dep. 269–70); Conklin Decl. Ex. E (Conklin email to Young, Mar. 18, 2009); Conklin Decl. ¶ 23.) However, Plaintiff also alleges that she was given assignments and projects that were impossible to complete in 20 hours per week, as well as assignments that were impossible to complete given her physical limitations. (Pl.'s Memorandum and Cross Mot. for Summ. J. in Opp. to Defs.' Mot. for Summ. J. (Pl.'s Mot.) 11–12.)

VIII.    Plaintiff's Termination

On March 27, 2009, Conklin and Rasmussen scheduled another meeting to discuss Young's performance. (Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 21.) Conklin and Rasmussen did not intend to terminate Young during this meeting. (Id.)

When Young appeared for the March 27 meeting, she brought a tape recorder and attempted to record the meeting. (Harris Decl. Ex. C (Young Dep. 287); Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 21.) Rasmussen informed Plaintiff that Henri Bendel did not consent to the meeting being tape-recorded and that Plaintiff was required to participate because the meeting was work-related. (Rasmussen Decl. ¶ 21.) Rasmussen informed Plaintiff that there would be consequences if she failed to participate in the meeting, but Plaintiff nonetheless refused to participate. (Id.; Conklin Decl. ¶ 25.)

On March 28, 2009, Conklin and Rasmussen again attempted to meet with Plaintiff, but she still refused to participate without tape-recording the meeting. (Conklin Decl. ¶ 22; Rasmussen Decl. ¶ 26.) Because Plaintiff refused to follow her supervisors' instructions and participate in the performance-related meeting without the communication being tape-recorded, and in light of her poor performance issues, Plaintiff was terminated. (Harris Decl. Ex. C (Young Dep. 294–95); Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 23.)

Plaintiff does not dispute that she was terminated because of poor work performance. (Pl.'s Mot. 13 ("I was terminated for policy violation and poor performance."), 21 ("I failed to meet my employer's unrealistic and medically unadvisable expectations.").)

I.     Legal Standard for Summary Judgment

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory

statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Summary judgment is "appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001), cert. denied, 534 U.S. 993 (2001). The Court must decide whether a plaintiff can satisfy his or her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against" him or her. E.g., Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation marks omitted).

The Court should "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (citations and internal quotation marks omitted). Even a pro se plaintiff, however, must allege facts to defeat a motion for summary judgment. Saldana v. Local 32B-32J Serv. Emps. Int'l Union, No. 03 Civ. 1853 (DF), 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005).

II.    Plaintiff's Discrimination Claims

Plaintiff asserts that Defendants (1) discriminated against her based on disability; (2) failed to accommodate her disability; (3) retaliated against her for complaining of discrimination; and (4) discriminated against her based on age.[1]

A.    The McDonnell Douglas Standard

The Court evaluates all of Plaintiff's discrimination claims under the three-step burden shifting analysis set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Holowecki v. Federal Exp. Corp., 382 F. App'x 42, 45 (2d Cir. 2010) (McDonnell Douglas applies to age discrimination claims); Fall v. New York State United Teachers, 289 F. App'x 419, 422 (2d Cir. 2008) (same for disability discrimination claims); Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) (same for retaliation claims).

Under McDonnell Douglas, Plaintiff must first establish a prima facie case of discrimination by showing (1) that she was within a protected group; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that "such action occurred under circumstances giving rise to an inference of employment discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010).

---

[1] The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2009). The ADA also prohibits employers from retaliating against an individual for "oppos[ing] any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. Plaintiff has also brought analogous claims under the New York State Human Rights Law and the New York City Human Rights Law.

If Plaintiff can demonstrate these elements, the burden then shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). Defendants' burden is "one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000).

Once Defendants have carried their burden, Plaintiff must then raise a triable issue of fact as to whether defendant's "legitimate, nondiscriminatory reason" for the adverse employment action was merely pretextual. Reeves at 143. Otherwise, Defendants are entitled to summary judgment.

### B.    Disability-Based Discrimination

Plaintiff fails to raise a triable issue of material fact as to the fourth element of a prima facie case of disability discrimination, because she cannot show that her termination "occurred under circumstances giving rise to an inference of employment discrimination." Gorzynski, 596 F.3d 93 at 107.[2]

There is no evidence in the record to indicate that Defendants terminated her due to her medical condition. In fact, Plaintiff herself acknowledges that she was terminated for "policy violation" and "poor performance" and because she "failed to

---

[2] The Court also doubts whether Plaintiff can demonstrate that she was a member of a protected group, as required by the first element of the McDonnell Douglas test. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of an individual, where "major life activities" are defined as, inter alia, "seeing, hearing, sleeping, walking, standing." 42 U.S.C. § 12102(1)–(2). Plaintiff was instructed to limit her hours to a part-time schedule but was otherwise able to work. (Pl.'s Mot. 12.) Plaintiff was more likely "disabled" under the broader definition of that term in the NYSHRL and NYCHRL. See N.Y. Exec. Law § 292(21) (McKinney 2012) (a disability includes an impairment of "normal bodily function"); N.Y.C. Admin. Code § 8-102(16)(a)–(b) (a disability includes "an impairment of any system of the body"). Regardless, the Court need not reach the issue, because Plaintiff's claims fail on the fourth prong of the McDonnell Douglas test.

meet [her] employer's . . . expectations." (Pl.'s Mot. 13, 21.) Plaintiff's opinion that such expectations were "unrealistic and medically unadvisable" does not make Defendants' actions discriminatory, particularly where Plaintiff did not raise those complaints with Defendants. (Conklin Decl. ¶ 18–20; Rasmussen Decl. ¶ 13–14; Pl.'s Mot. 12.) Plaintiff quibbles with terminology—claiming that she was dismissed for "policy violation" rather than "insubordination"—but her termination was in any event unrelated to her medical condition.

Furthermore, the factual record in this case leads inexorably to an inference of performance-based dismissal, not disability-based discrimination. The undisputed timeline speaks for itself. Defendants were concerned about Plaintiff's performance long before Defendants knew of any medical condition. (Conklin Decl. ¶¶ 8, 10.) Conklin met with Plaintiff to discuss her performance on June 18, 2008 (id. ¶¶ 10–11), before Plaintiff's first medical leave of absence, which lasted from August 28 to September 19 (Harris Decl. Ex. C (Young Dep. 109, 115)). Conklin and Rasmussen then issued Plaintiff the PIP on October 1 (Conklin Decl. Ex. A; Rasmussen Decl. A.), before Plaintiff's second medical leave of absence, which lasted from October 10, 2008, to February 6, 2009 (Harris Decl. Ex. C (Young Dep. 129–30)). Plaintiff then violated Conklin and Rasmussen's directions not to exceed her part-time schedule several times from February to March 2009. (Conklin Decl. Exs. C–E (Conklin emails to Young); Conklin Decl. ¶ 22–23.) Conklin and Rasmussen met with Plaintiff again in February 2009 after her return. (Rasmussen Decl. ¶ 17; Conklin Decl. ¶ 16.) Conklin and Rasmussen attempted to meet with Plaintiff on

March 27, but she refused to participate without tape-recording the meeting. (Harris Decl. Ex. C (Young Dep. 287); Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 21.) It was not until March 28—after numerous instances of poor performance—that Conklin and Rasmussen terminated Plaintiff. (Harris Decl. Ex. C (Young Dep. 294–95); Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 23.)

Much of Plaintiff's battery of complaints is completely irrelevant to the existence of discrimination and similarly fails to raise a triable issue. For example, Plaintiff claims that Defendants' critiques of her performance were a "campaign to systematically criticize and discredit [her] performance," that she was "brow beaten for not being able to fix a ticket machine," and that she was incorrectly "accused of divulging confidential information" and "criticized for giving incorrect check approval process information." (Pl.'s Mot. 4.) These claims, even if true, simply do not constitute a "genuine issue of material fact." See Anderson, 477 U.S. at 248.

Insofar as Plaintiff does claim that Defendants discriminated against her, those claims amount to nothing more than "mere speculation or conjecture." Hicks, 593 F.3d at 166. For example, Plaintiff states without proof that Rasmussen's statement that she "didn't want to hear it" referred to her disability. (Pl.'s Mot. 5.) Plaintiff also argues that Conklin's harsh evaluation after only 20 days of being her supervisor must be discriminatory or retaliatory. (Pl.'s Mot. 7.) All in all, Plaintiff fails to allege "affirmative and specific evidence," Price, 808 F. Supp. 2d at 685, that is sufficiently compelling to preclude a grant of summary judgment, or to show more than a "metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586.

13

Even if Plaintiff could establish a prima facie case of discrimination based on disability, Defendants have easily met their burden of production to provide a "legitimate, nondiscriminatory reason," Leibowitz, 584 F.3d at 499, for terminating Plaintiff: her refusal to participate in a mandatory meeting and her record of insubordination and poor performance. On-the-job misconduct and poor work performance "always constitute legitimate and nondiscriminatory reasons" for termination. Risco v. McHugh, 868 F. Supp. 2d 75, 109 (S.D.N.Y. 2012).

Finally, Plaintiff cannot raise a triable issue of fact as to whether Defendants' proffered reasons were in fact "pretext for discrimination." Iverson v. Verizon Commc'ns, No. 08 Civ. 8873 (SAS), 2009 WL 3334796, at *4 (S.D.N.Y. Oct. 13, 2009). Plaintiff does not dispute that Defendants' concerns over her performance began before her medical leaves of absence. While she cites prior positive evaluations of her performance (e.g., Pl.'s Mot. 26), "[t]he mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus." Missick v. City of New York, 707 F. Supp. 2d 336, 350 (E.D.N.Y. 2010).

It is true that NYCHRL claims "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009). Even under this more liberal standard, however, there is simply no triable question as to whether an inference of discrimination existed under these circumstances. It did not.

C.    Failure to Accommodate a Disability

There is also no material issue of fact as to whether Defendants failed to accommodate a disability. To establish a prima facie case of discrimination based on failure to accommodate, Young must establish that (1) she is a person with a disability; (2) Defendants had notice of her disability; (3) Plaintiff could perform the essential functions of her job with reasonable accommodation; and (4) Defendants refused to make such accommodations. Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006). Young's claim fails on both the second and fourth elements.

First, based on the uncontroverted evidence, Defendants had no notice that Plaintiff had a disability.[3] Defendants were unaware that Plaintiff was "disabled" within the meaning of the ADA, and did not consider her to be disabled. (Conklin Decl. ¶ 28; Rasmussen Decl. ¶¶ 17, 24.) Plaintiff states that she was "absolutely frail" and "radically ill" (Pl.'s Mot. 9), but even knowledge that Plaintiff took medical leaves or experienced pain does not suffice to show awareness of a disability within the meaning of the statute. See Cozzi v. Great Neck Union Free Sch. Dist., 05 Civ. 1389 (ENV), 2009 WL 2602462, at *14 (E.D.N.Y. Aug. 21, 2009); Cotz v. Mastroeni, 476 F. Supp. 2d 332, 370 (S.D.N.Y. 2007).

Second, Plaintiff's claim fails because Defendants did in fact accommodate Young's medical condition. Plaintiff has not identified any request for accommodation that was not provided to her: she both received her requested leaves

_____

[3] The Court also doubts whether Plaintiff can demonstrate that she was a member of a protected group within the meaning of the ADA, as required by the first element of the test. See supra p. 11 n.2. Regardless, the Court need not reach the issue, because Plaintiff's claims fail on both the second and fourth elements.

of absence and was assigned a part-time, restricted schedule. (Conklin Decl. ¶ 18–20; Rasmussen Decl. ¶ 13–14; Pl.'s Mot. 12.) Plaintiff claims that Defendants failed to provided her with the leave policy for which she was entitled (Pl.'s Mot. 3.), but she neither alleges that she requested the policy nor disputes that she received the accommodations she did request.

Plaintiff's best argument is her claim that Defendants essentially gave mere lip service to her condition: that her daily workload remained the same but that Defendants also gave her "additional projects which were impossible to complete" during her part-time schedule. (Pl.'s Mot. 10–11.) Thus, Plaintiff alleges, Defendant Conklin bolstered and "escalate[d] her case for [Plaintiff's] dismissal." (Id.) Plaintiff's claim fails for two reasons. First, she does not support her claim that Defendants' expectations were unrealistic or impossible to meet with anything other than her bare assertions. Second, Plaintiff does not allege that the adverse employment action in question—her termination—was the result of her either failing to complete or incorrectly completing these tasks. Instead, as Plaintiff herself admits, Defendants terminated her based on misconduct, whether called "insubordination" or "policy violation." (Harris Decl. Ex. C (Young Dep. 294–95); Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 23; Pl.'s Mot. 13.)

### D. Plaintiff's Retaliation Claims

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in an ADA-protected activity; (2) Defendants were aware of that activity; (3) she suffered an adverse employment action; and (4) a causal connection existed

between that protected activity and the adverse employment action. Distasio v. Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir.1998). Even if Plaintiff were disabled within the meaning of the ADA and Defendants were aware of her disability, Plaintiff cannot show a triable issue as to the fourth element of her claim.

Fundamentally, Plaintiff's claim amounts to the mere observation that the adverse action—her termination—followed her protected conduct—working while disabled. She cannot establish a prima facie case of retaliation on this basis. See Peters v. Mount Sinai Hosp., No. 08 Civ. 7250 (CM), 2010 WL 1372686, at *11 (S.D.N.Y. Mar. 30, 2010). Rather, the undisputed evidence shows that Defendants had long been concerned about Plaintiff's performance. (Harris Decl. Ex. C (Young Dep. 294–95); Conklin Decl. ¶ 25; Rasmussen Decl. ¶ 23.) Furthermore, after being told of Plaintiff's condition, Defendants consistently accommodated Plaintiff's requests for medical leave and a part-time schedule. (Harris Decl. Ex. C (Young Dep. 119).) There are simply no facts to plausibly suggest a causal connection between Plaintiff's medical condition and her termination.

Even if Plaintiff could state a prima facie claim for retaliation, Defendants proffer a valid reason for her termination, and Plaintiff has identified no record evidence that Defendants' valid reason her was pretextual. What she offers instead is mere speculation, and "[s]uch conjecture cannot establish pretext." Kolenovic v. ABM Indus. Inc., 361 F. App'x 246, 249 (2d Cir. 2010). Even under the more liberal standard of the NYCHRL, Plaintiff has failed to raise a triable issue on this count.

## E. Age-Based Discrimination

Plaintiff failed to include allegations relevant to her age discrimination in her Verified Complaint filed with the City of New York Commission on Human Rights. (Harris Decl. Ex. B.) Nonetheless, the Court "liberally construe[s]" Plaintiff's pleadings "to raise the strongest arguments they suggest." Bertin, 478 F.3d at 491.

Plaintiff raises no triable issue of material fact as to whether Defendants discriminated against her on the basis of age. In order to withstand summary judgment, Plaintiff must raise a triable issue that age was the "but for" reason for the adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Gorzynski, 596 F.3d at 106 ("but-for" standard applies to NYSHRL age discrimination claims). Based on her own admissions, Plaintiff cannot show that age was the "but for" reason for her termination. (Pl.'s Mot. 13, 21.) There is no evidence that defendants were even aware of plaintiff's age. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 81 (2d Cir. 2005).

Even if Plaintiff put forward a prima facie case for age discrimination, her claim would fail under the McDonnell Douglas burden-shifting framework, due to Defendants' legitimate, non-pretextual reason for terminating her based on her history of poor performance and violation of her supervisors' instructions.

## III. Plaintiff's Harassment Claim

Plaintiff also failed to include allegations of harassment in her Verified Complaint (Harris Decl. Ex. B.). The Court also "liberally construe[s]" this allegation, Bertin, 478 F.3d at 491, but similarly finds it meritless.

Plaintiff has raised no triable issue of material fact as to whether Defendants engaged in the extreme and severe conduct necessary to prove harassment. See Joseph v. North Shore Univ. Hosp., 473 F. App'x 34, 37 (2d Cir. 2012) ("Harassment is actionable when it creates a hostile work environment which is . . . severely permeated with discriminatory intimidation, ridicule, and insult . . . .") (citations and internal quotation marks omitted). Plaintiff claims that that Conklin "openly mocked me, and poked fun at my disability to my subordinates." (Pl's Mot. 16.) However, such "offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004). Instead, the Court must look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Under all the circumstances, particularly given the history of accommodations of her condition, Plaintiff's one allegation is inadequate to support her claim.

Plaintiff raises a slew of other harassment-related assertions, but none raises a triable issue of material fact as to whether any alleged harassment occurred because of her "disability." See Joseph, 473 F. App'x at 37. Plaintiff alleges, inter alia, that she received "pressure, hostility, accusations, [and] intimidation . . . at the hands of Kristen Conklin and Dana Rasmussen," and that her meetings with Conklin and Rasmussen "were hostile and demoralizing." (Pl.'s Mot. 14, 18.) But

vague gesturing at "pressure" and "hostility" creates no triable issue as to the crucial question of causality: whether she "was ridiculed or harassed <u>because</u> of an alleged disability." <u>Joseph</u>, 473 F. App'x at 37 (emphasis added).

## CONCLUSION

Plaintiff asserts a potpourri of complaints against her former employer and nitpicks many of their characterizations. Ultimately, however, even liberally construed, Plaintiff's pleadings cannot alter the fact that she acknowledges that Defendants terminated her for her performance—not for her disability or age, nor as retaliation for complaining of such discrimination. The undisputed factual record confirms that Defendants had a legitimate, non-pretextual reason for her termination: a history of poor performance and insubordination lasting many months. For similar reasons, Plaintiff fails to raise a material issue as to age discrimination and harassment.

For these reasons, the Court GRANTS Defendants' motion for summary

judgment in its entirety. The Clerk of the Court is directed to terminate the motion

at Docket No. **56** and to close this case.

SO ORDERED.

Dated:     New York, New York
           September **25**, 2013

KATHERINE B. FORREST
United States District Judge

CC:
Marian Young
10 Waterside Plaza
Apt. # 24H
New York, NY 10010
PRO SE

21